**SUPREME EQUIPMENT & SYSTEMS CORP., Plaintiff-Appellee,**

v.

**LEAR SIEGLER, INC. and Nat Levenberg, Defendants-Appellants.**

**Nos. 371, 420, 421, Dockets 72–1604, 72–1610, 73–1304.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1974.

Decided April 9, 1974.

Arthur M. Lieberman, New York City (Sandoe, Hopgood & Calimafde, John M. Calimafde, Marvin N. Gordon, New York City, of counsel), for plaintiff-appellee.

Donald R. Dunner, Washington, D. C. (Lane, Aitken, Dunner & Ziems, Washington, D. C., Joseph M. Lane, New York City, Gilbert H. Hennessey, Washington, D. C., Kaye, Scholer, Fierman, Hays & Handler, David Goldberg, Guy M. Blynn, New York City, of counsel), for defendants-appellants.

Before KAUFMAN, Chief Judge, and FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

On February 18, 1970, Supreme Equipment and Systems Corporation commenced a declaratory judgment action against Lear Siegler, Inc. and Nat Levenberg, seeking a declaration of invalidity and of non-infringement of United States Letters Patent, Reissue No. 26,902, for a "Tilt-Proof Cabinet Construction." Levenberg, the named inventor and patent owner, and Lear Siegler, the exclusive licensee, counterclaimed for infringement. Following a two-day trial before Hon. Jack B. Weinstein, United States District Judge for the Eastern District of New York, he, on March 2, 1972, delivered an oral opinion, reported at 173 U.S.P.Q. 224, holding claims 1 and 2 of the Levenberg patent valid but not infringed; claims 3–11, which were added when the Levenberg patent was reissued, were held invalid on the ground that they were based on Supreme's improvements and not on Levenberg's invention. All the parties have appealed. Since we conclude that all the claims are invalid for claiming subject matter which would have been obvious to one skilled in the art, 35 U.S. C. § 103, we reverse as to claims 1 and 2, and affirm with respect to claims 3–

11, without reaching the questions of infringement or of the propriety of the reissuance of the Levenberg patent.

The Levenberg patent is directed to an improved filing cabinet and more specifically to a construction which reduces the potential for tipping caused by the overhanging weight of a plurality of fully opened drawers.* The preferred embodiment of the arrangement described in the patent specification includes a conventional vertical two-drawer filing cabinet in which the drawers are tied together by means of a cord. One end of the cord is attached to the rear portion of the upper drawer, passed slidably through a pair of eyelets mounted on the inside face of the back wall of the cabinet housing, and secured to the lower drawer. The cord is of such length that it is taut when one drawer is fully opened and the other is closed. Therefore, when the drawers are in these relative positions, any outward movement of the closed drawer causes an equal inward movement of the opened drawer. The arrangement thus effectively limits the amount of overhanging weight and therefore reduces the potential for tipping by preventing more than one drawer from being fully withdrawn at one time.

Judge Weinstein concluded that "[i]t's a relatively simple device, but . . . that it complies with the requirements of the patent law and the cases in that it shows a considerable amount of ingenuity and what amounts to a new conception in the file cabinet anti-tipping field." 173 U.S.P.Q. at 225. We, however, cannot agree that the subject matter of the Levenberg patent complies with the nonobviousness requirement of 35 U.S.C. § 103. Lemelson v. Topper Corp., 450 F.2d 845, 848–849 (2d Cir. 1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1253, 31 L.Ed.2d 456 (1972). "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

When Levenberg conceived the design of his improved file cabinet in late 1964, others had already recognized the tipping problem, isolated its cause and provided the general approach to its solution. Mr. K. Bolesky and Mr. F. Saaf, in their United States Patent No. 2,240,067, issued in 1941, stated:

> [Filing] cabinets usually comprise a vertically disposed series of drawers of substantial length, and upon the opening of any of these drawers the weight is shifted forwardly. Should more than one drawer be opened at a time this shifting of the weight may be sufficient to bring the center of gravity forward of the base and cause the structure to tilt foward and endanger the attendant. It is the purpose of this invention [a mechanical interlock device] to prevent accidents of this character by rendering it impossible, in the normal use of such cabinets, to open a second drawer while one drawer is open.

It was also known that a cord and pulley system could be used to manipulate the movement of drawers in structures like file cabinets. Mr. W. Hartbeck discloses in his United States Patent No.

---

* Claim 1 is representative of the several claims in the Levenberg Patent and reads as follows:

> Tilt-proof cabinet construction comprising: a housing, a pair of drawers slidably arranged for movement within said housing and outwardly thereof, and means engaging a portion of each drawer and a fixed surface of said housing for permitting only one of said plurality of drawers to be selectively withdrawn to maximum extension outwardly of said housing, said means including a flexible cord of predetermined length, eyelet means on an inner surface of said housing, said cord slidably passing through said eyelets, said cord having first and second ends, at least one of said ends being maintained in fixed relation relative to said housing during movement of either drawer to full extension.

1,238,514, issued in 1917, a drawer retracting mechanism in which a cord, interconnected to several drawers and pulleys and attached to a weight, causes opened drawers to automatically return to closed positions. Although Hartbeck does not disclose the identical pulley system employed by Levenberg, that age-old system is probably well known to almost everyone. See Triax Co. v. Hartman Metal Fabricators, Inc., 479 F.2d 951, 955 (2d Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740 (1973). The principle is embodied in such commonplace devices as clotheslines. In any event, it certainly would have been known to a skilled worker in the art of office furniture. Its application in closely related fields is illustrated by United States Patent No. 700,174, issued to Mr. R. Copeland, and British Patent No. 102,735, issued to Mr. I. Ohlson and Mr. N. Lundberg. See LTV, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 268 n. 1 (2d Cir. 1967).

Mindful of the care with which patents for combinations must be scrutinized, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950), we are confident that Levenberg's claimed invention was obvious in view of the above recited prior art and thus that the Patent Office erred in issuing the Levenberg Patent. See Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir. 1962). It would have required no more than the exercise of mechanical talent on the part of those having ordinary skill in the art of office furniture to have employed the age-old pulley system, previously utilized in closely related fields by Copeland, Ohlson and Lundberg, to limit the number of drawers that could be maintained in opened positions as Bolesky and Saaf had taught, especially in view of the Hartbeck Patent which disclosed that a cord and pulley system could be utilized to effectuate the movement of vertically disposed drawers.

The secondary considerations of long-felt need and commercial success, Graham v. John Deere Co., *supra*, 383 U.S. at 17–18, 86 S.Ct. 684, do not suggest a contrary conclusion. It is urged that conventional file cabinets have always lacked stability, that a number of patents for mechanical interlock mechanisms designed to remedy this problem have issued, and that many companies are now utilizing a cord interlock device to eliminate tipping. This evidence here, however, does not necessarily point to invention. There is no indication of actual use of any interlocking device in conventional filing cabinets prior to that by Levenberg. This non-use may be attributed to the lack of a satisfactory prior art device, but it could also be due to a belief by the industry that the problem was not of sufficient magnitude to justify their use. The present use of cord interlocks seems readily explainable by the fact that in the mid-1960's a new type of file cabinet became popular which has a narrower base and therefore a greatly increased potential for tipping. In view of the previously discussed prior art, patentability cannot be predicated on the speculation about need and commercial success that is required here. See Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

In sum, we find all the claims of the Levenberg Patent lacking in patentable subject matter and accordingly affirm so much of the district court's judgment as declares claims 3–11 invalid; as to claims 1 and 2 we reverse and remand with instructions to modify the judgment to include a declaration that claims 1 and 2 are also invalid.